Reinert Berkland, Administrator of the Estate of Martha Berkland, Deceased, Appellee, v. Howard Watson and Thomas Watson, Appellants.

Gen. No. 8,070.

Opinion filed October 19, 1929. Rehearing denied February 4, 1930.

GARDNER & GARDNER, for appellants; FRED E. GARDNER, of counsel.

SEYSTER & FEARER, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

This suit was instituted by Reinert Berkland, administrator of the estate of Martha Berkland, deceased, appellee, in the circuit court of Ogle county, to recover damages of Howard Watson and Thomas Watson, on account of the death of Martha Berkland, deceased. A jury trial was had resulting in favor of

appellee in the sum of $1,650; judgment was rendered upon the verdict, and the appellants prosecute this appeal.

The declaration consists of two counts. In the first count, it is averred that the defendant Howard Watson, a minor son, servant, agent and employee of the defendant Thomas Watson, was on the 31st day of May, 1927, driving an automobile on a certain public highway; that Martha Berkland, deceased, wife of Reinert Berkland, using due care and caution, drove an automobile across said public highway, and that the automobile driven by said Howard Watson was driven in such a negligent and careless manner that it struck the automobile driven by Martha Berkland, deceased, and that as a result thereof Martha Berkland was injured and died, leaving her surviving Reinert Berkland, her husband, and 6 children, who, by reason of her death, have been deprived of their means of support.

The second count contains the same averments as found in the first, except that it avers that the car driven by the minor son, Howard Watson, was furnished by the defendant Thomas Watson, father of Howard Watson, for the use of said Howard Watson, in going to and returning from a public school.

To the declaration the defendants pleaded the general issue and two special pleas. The first special plea denied that Howard Watson, minor son of Thomas Watson, was the servant, agent and employee of the said Thomas Watson, as charged in the first count of the declaration.

By the second special plea, the defendants denied that the automobile driven by Howard Watson, on the day in question, was furnished by Thomas Watson, his father, a defendant, and denied that Thomas Watson was at any time the owner of said automobile, and avers that said automobile was owned by one Robert Watson,

The evidence shows that in the fall of 1926, Howard Watson, one of the defendants, and of the age of 15 years, a son of Thomas Watson, the other defendant, started to school at the Community High School at Rochelle, Illinois, a distance of about 9 miles from where he lived with his father. During the fall and winter of 1926, and up to the time of the accident in question, which occurred on May 31, 1927, Howard Watson and a boy by the name of Fred Busse, who lived in the neighborhood, and was also attending the same school, drove to and from school each day; on alternating weeks each boy would drive his father's car, taking the other boy as a passenger. Howard Watson lived at home and his father furnished him support, clothes, schoolbooks and such necessities as a parent would ordinarily furnish. Sometimes Howard took his lunch to school and when he did not, he obtained his lunch at the high school with the means provided by his father.

On May 31, 1927, the defendant Howard Watson furnished the car in which he and Busse rode to school. He borrowed his brother Robert Watson's automobile and used the same in going to and returning from school, that day. The record discloses that the father, Thomas Watson, did not know that his son Howard drove the car of his brother Robert, until later in the day and after the accident.

Robert Watson had purchased his automobile several months prior, with his own money, and no one else in the Watson family had any financial interest in it. Robert Watson, on the day of the accident, was 22 years of age, lived at home with his father, Thomas Watson, and worked for him for monthly wages, board, room and washing. On the day in question it was raining when school was out, and before starting for home the boys put on the side curtains. Howard Watson drove and Busse sat in the front seat beside him and they proceeded towards home by the most direct

route. The first four miles was a concrete highway known as the "Lincoln Highway" running east and west. At this point Howard Watson turned north off the Lincoln Highway on to a gravel highway. The Watson car was traveling north and the Berkland car, east; the view of the highway approaching the intersection was unobstructed. The automobiles collided in the intersection; the right front part of the Watson car struck the right rear part of the Berkland car. After the collision, the Berkland car proceeded northeast to a ditch at the edge of the intersection, where it turned over, and injured Martha Berkland, the deceased, from which injuries she died three days later.

Several reasons are assigned for a reversal of the judgment; two, only, are argued. First, that the deceased was guilty of negligence, and second, that the defendant Thomas Watson was not liable, as a matter of law, and the court erred in not directing a verdict in his favor.

Owing to the conclusion we have reached, we refrain from expressing any opinion on the question of the alleged negligence of the deceased, or of Howard Watson.

The important question, however, arising from the facts shown in this record, is whether or not the verdict and judgment can be sustained against Thomas Watson.

Appellee contends that the statute made it the duty of the parent to send his son to school, the latter being under 16 years of age; that because of the distance between his home and the school, the parent provided for the son an automobile in which he could make his trips; that both convenience and necessity made it imperative for the parent to provide means of conveyance for his son to and from school; that in the performance of the legal duty to educate the son, the relation of master and servant, or principal and agent, existed between the parent and child, and that the par-

ent is liable for the torts of the child while the latter is employed about his parent's business (compelling his attendance at school). It is also insisted that if the son had been driving a horse, or riding his own bicycle, or walking, and negligently caused injury while going to or returning from school, his father would have been liable.

Appellee has cited authorities to the effect the law places a child under the dominion of the parent, and while the child is employed about the affairs of his parent, he is to be regarded as a servant. There is no doubt that this rule of law is well established and based upon sound principles. It is obvious that if a parent sends his child to town in an automobile for the purpose of buying groceries, the parent will be liable for the negligent driving of the child while on the way. In such a case the child is the agent of his father in transacting the father's business, but in the case at bar there is no performance of any business transaction. The law compelling a parent to send his child to school is not grounded upon any business proposition; it proceeds from public policy to promote better citizenship, and is entirely separate and apart from the business of the parent. It is plain that there is no relationship of master and servant, or principal and agent, between the parent and child in the matter of compulsory school attendance.

The theory of appellee is that the law makes it the business of the father to send his child, under 16 years of age, to school, and while the child is attending school he is carrying out his father's business. The fallacy of this theory is apparent. It cannot be reasonably contended that the relation of master and servant exists, while a child under 16 years of age is attending school, to cease after he passes that age, since no legal duty rests upon the parent to send him to school. If the relation of master and servant exists between the

parent and the school child, it will begin from the moment the child leaves home and continue throughout the day while the child is attending school, and in going to and returning from school. If this doctrine is to obtain, then the parent is liable for the torts of his son, who engages in a fist fight at school and injures another, or who recklessly throws an implement of some character which strikes and injures another.

In fact, it is impossible to conceive of any act which a boy might do during the day, and between the time he started to school, and the time when he returned from school, for which the parent will not be liable, which act results in injury to person or to property.

The facts in this case seem to indicate that the Busse boy was as much to blame for the collision as the Watson boy, although the latter was the driver. If the Busse boy had been joined in this suit, we see no reason why a judgment could not as well be sustained against him, as the Watson boy. The Busse boy's father would, under the contention of appellee, be also liable as both boys were being sent to school, and both engaged in the transaction of their respective father's business. Again, under that theory, if Howard Watson had carelessly driven Robert's car and damaged it, Robert could sue his father for damages occasioned by Howard's negligence.

The relation of master and servant does not arise out of the fact that the school boy goes to school in an automobile or any other kind of a vehicle; it must arise out of the fact that the child is performing a service for his father, regardless of the means of transportation.

Appellee insists it exists whether the child walked or drove to school. It would therefore appear that under the rule contended for, a parent would be liable for every tort which his child might commit, whether he was walking or driving to school.

The Illinois cases which hold a parent liable, are predicated upon proof that the child was engaged in the transaction of some of the father's business, or upon the ''family use'' doctrine. None of them relate to the performance of a public duty. None of them have ever attempted to confuse public duty with private business. The decided cases in this state can have no bearing upon the decision to be made in this case.

In view of the facts as disclosed by this record, we are of the opinion that neither the relation of master and servant nor of principal and agent existed, as insisted by appellee.

We conclude therefore, that the court erred in refusing to direct a verdict as to the defendant Thomas Watson, and in rendering judgment on the verdict of the jury. The judgment is reversed and cause remanded.

*Reversed and remanded.*